Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Donald E. Walter | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3014 | **DATE** | 6/19/2002 |
| **CASE TITLE** | Rita I. Tery vs. Sedgwick, Detert, Moran | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Ruling: Defendant's motion for summary judgment (15-1) is granted.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 3 2002 date docketed | |
| | Notified counsel by telephone. | | | 32 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | S.B. docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/2/2002 date mailed notice | |
| GL courtroom deputy's initials | | 02 JUL -3 AM 8:6 | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| RITA I. TERRY | CIVIL ACTION NO. 01-3014 |
| VERSUS | JUDGE DONALD E. WALTER |
| SEDGWICK, DETERT, MORAN & ARNOLD | MAGISTRATE JUDGE NAN R. NOLAN |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. 15] filed on behalf of Defendant, Sedgwick, Detert, Moran & Arnold, pursuant to Federal Rule of Civil Procedure 56. The motion is opposed by Plaintiff Rita I. Terry [Doc. 23]. For the following reasons, the Defendant's motion is GRANTED.

## STATEMENT OF THE CASE

Plaintiff Rita I. Terry (Ms. Terry) is an African-American woman. (Pl.'s Compl. ¶ 3.) She worked for Defendant Sedgwick, Detert, Moran & Arnold (Sedgwick) as a legal secretary from August 9, 1993 to December 7, 1999. (Id.) She was responsible for covering office services, i.e., the mail room, between 5:30 p.m. and 6:00 p.m. each day and ensuring that mail was taken downstairs for shipment. (Def.'s Mot. Summ. J. at 1.) Sedgwick terminated Ms. Terry from her position on December 7, 1999, for failing to send out an overnight Federal Express (FedEx) package. (Pl.'s Compl. ¶ 10-11.)

Sedgwick contends that Ms. Terry failed to carry out her responsibility for the mail on three occasions. (Def.'s Mot. Summ. J. at 2-5.) In September 1999 Sedgwick's Office Administrator Jena Neisler gave Ms. Terry a verbal warning for failing to take FedEx packages

downstairs. (Id. at 2.) Then, on October 27, 1999, Ms. Terry failed to take a certified letter downstairs that had been placed in the mail room before 6:00 p.m. (Id. at 3.) Following this, Ms. Neisler gave Ms. Terry both a verbal and a written reprimand. (Id.) Ms. Neisler sent Ms. Terry a memorandum on October 28, 1999, reiterating her job responsibilities. (Id. Ex. E.) She stated that Ms. Terry was responsible for checking the mail room right before she left the office at 6:00 p.m. (Id.)

The third offense occurred on November 30, 1999, and involved a particularly important FedEx package. Marguerite Sauser, the secretary preparing the FedEx, phoned Ms. Terry to verify that she would be there until 6:00 p.m. (Id. at 5.) The FedEx contained an affidavit that was to be filed at the courthouse in Indianapolis the next day. (Id.) Because the package was not sent via FedEx, Sedgwick spent approximately $400 to have a courier deliver it to Indianapolis on time. (Neisler Dep. at 167.)

The attorney sending the FedEx requested that Ms. Neisler determine who was responsible for it not being sent. (Def.'s Mot. Summ. J. at 5.) Ms. Neisler conducted a week-long investigation involving witness statements, office video surveillance tapes, copy machine records, access card records, and employee time sheets. (Id. at 5-8.) All of the evidence supported Ms. Sauser's contention that she placed the FedEx in the mail room at approximately 5:45 p.m. The evidence controverted Ms. Terry's statement that she checked the mail room before she left at 6:05 p.m. (Id.) In particular, the video tapes showed that Ms. Terry actually left work at approximately 5:54 p.m. (Id. at 6.) The partners of the firm directed Ms. Neisler to terminate Ms. Terry. (Id. at 8.) Ms. Neisler told Ms. Terry that she was being terminated because this was the third time she failed to perform her responsibilities and because she actually

2

left at 5:55 p.m. instead of 6:05 p.m. as she noted on her time sheet. (Neisler Dep. at 20.)

Ms. Terry contends that she was terminated for refusing to accept blame for Ms. Sauser's failure to deliver the FedEx to the mail room on time. (Opp'n to Mot. Summ. J. at 1.) Ms. Terry also contends that she only failed to pick up mail one time prior to November 30. (Id. at 2.) She argues that Sedgwick discriminated against her, the only African-American at the firm, because similarly situated employees, including Ms. Sauser, Jane Howell, Mayra Colon, and Tammy Panczuk, were treated more favorably than her. (Id. at 3.)

First, Ms. Terry notes that the swipe card records reflect that Ms. Sauser actually left work at 5:53 p.m. while she put 6:00 p.m. on her time card. (Id. at 6.) Second, Ms. Terry was disciplined for failing to pick up a certified letter on October 27, 1999, that she contends Ms. Howell had actually failed to place in the designated mail bin. (Id. at 8-9.) Ms. Howell was not disciplined for putting the letter in the wrong area of the mail room. (Id. at 9.) Third, in October 1999 Ms. Colon failed to take four FedEx packages downstairs and admitted that it was her fault. (Id. at 8.) She was given a verbal warning. (Id.) Finally, although Ms. Panczuk noted that she left at 6:00 p.m. on her time sheet, the video surveillance tapes show that she left before Ms. Terry. (Id. at 6.) Ms. Terry contends that all of these instances show "that she was singled out for discipline, while under the same facts, other similarly situated employees outside the protected group were treated more favorably." (Id.)

Ms. Terry claims that Sedgwick's actions constitute discrimination based on her race in violation of 42 U.S.C. § 2000e-2 et seq. (Title VII of the Civil Rights Act of 1964). (Pl.'s Compl. at 3.) Ms. Terry met the prerequisites for filing a discrimination claim and timely filed her lawsuit. (Id. at 6-7, 9.)

3

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The moving party is not required to negate the elements of the non-moving party's case. Id. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1267 (7th Cir. 1986).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986). The non-moving party must go beyond the pleadings and "show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Fed. Deposit Ins. Corp., 781 F.2d at 1267 (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure

§ 2727 at 146-69). "[E]vidence in opposition to the motion that clearly is without any force is insufficient to raise a genuine issue." Id.

## ANALYSIS

### I. Prima Facie Case

To prove a claim of discrimination through circumstantial evidence, a plaintiff must prevail within the McDonnell Douglas-Burdine burden-shifting framework. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). This framework requires a plaintiff to prove a prima facie case of discrimination by a preponderance of the evidence. Burdine, 450 U.S. at 252; McDonnell Douglas, 411 U.S. at 802-04. If the plaintiff is successful, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. If the defendant meets this burden, the plaintiff must then prove that defendant's reasons were a pretext for discrimination. Id. at 804.

To prove a prima facie case, a plaintiff must show that (1) she is a member of a protected class, i.e., African-American; (2) she was performing her work in a satisfactory manner so as to meet her employer's expectations; (3) she was discharged; and (4) her employer treated similarly situated non-African-American employees more favorably. Stockett v. Muncie Ind. Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000); Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997).

Parts one and three of Ms. Terry's prima facie case are clearly met in this case. To meet her burden of proving part two of the test Ms. Terry must prove that she was performing her job

5

duties satisfactorily. Additionally, she must meet part four by proving that similarly situated, non-protected employees were treated more favorably.

A.  **Work Performance**

Sedgwick provided materials including depositions and memoranda showing that it was not satisfied with Ms. Terry's work performance. Sedgwick alleges that Ms. Terry failed to pick up mail three separate times in a ten-week period between September and November 1999. (Def.'s Mot. Summ. J. at 10.) Ms. Terry contends, however, that she only neglected to pick up mail once prior to November 30. Despite this difference of opinion, it is well-documented in the record that Ms. Terry was given explicit written instructions as to her job responsibilities on October 28 and 29, 1999. The October 28, 1999, memorandum that Ms. Neisler sent Ms. Terry specifically instructed that "[y]ou should be checking all of the bins in Office Services right before you leave at 6:00."[1] (Def.'s Mot. Summ. J. Ex. E.) It is clear from the summary judgment materials that Sedgwick was not satisfied with Ms. Terry's work.

B.  **Similarly Situated Employees**

Ms. Terry contends that Sedgwick treated non-African-American employees, including Ms. Sauser, Ms. Panczuk, Ms. Colon, and Ms. Howell, more favorably than it treated her. "To establish that [s]he is similarly situated, a plaintiff must show that the defendant more favorably treated someone outside the protected class who is directly comparable to the plaintiff 'in all

---

[1] Ms. Terry even requested a second memo from Ms. Neisler outlining all of her job duties. Ms. Neisler complied and sent Ms. Terry a memo on October 29, 1999, which described all of Ms. Terry's job responsibilities including secretarial, receptionist, and office services duties. (Id. Ex. F.)

material respects.'" Thompson v. John J. Madden Mental Health Ctr., No. 00-4297, 2002 U.S. App. LEXIS 9094, at *10 (7th Cir. May 9, 2002) (citation omitted).

Ms. Terry contends that, like her, Ms. Sauser and Ms. Panczuk also left earlier than their time sheets reflected, but were not disciplined. Sedgwick counters that their departure times were not relevant to the investigation regarding the FedEx.[2] (Def.'s Reply at 5.) Ms. Terry's departure time showed that she did not check the mail room at 6:00 p.m. The discovery that Ms. Terry was untruthful on her time sheet was simply additional evidence that she had not carried out her responsibilities.

Ms. Terry also argues that Ms. Colon and Ms. Howell were treated more favorably than she. However, Sedgwick contends that Ms. Colon, like Ms. Terry, was given an oral reprimand the first time she failed to take care of overnight mail. Sedgwick also notes that Ms. Howell's placing of a certified letter near the mail bin was not a violation of her job duties. Sedgwick argues that Ms. Howell's actions are not comparable to Ms. Terry's actions of neglecting to pick up mail. In sum, Sedgwick disagrees with Ms. Terry's assertion that it treated similarly situated employees more favorably.

## II. Legitimate, Nondiscriminatory Reason for Discharge

Clearly Sedgwick disputes whether the second and fourth elements of Ms. Terry's prima facie case have been established. However, assuming *arguendo* that Ms. Terry could establish a prima facie case, Sedgwick has articulated a legitimate, nondiscriminatory reason for its decision

---

[2] Ms. Panczuk's whereabouts on November 30 were important because she had seen Ms. Sauser in the mail room that evening. (Def.'s Mot. Summ. J. at 8.) Likewise, Sedgwick was only concerned with the time that Ms. Sauser entered the area near the mail room with a package in her hand and then departed without it. (Def.'s Reply at 5-6.) Moreover, Ms. Sauser was only required to work until 5:00 p.m. (Id. at 7-8.)

7

to terminate Ms. Terry— her unsatisfactory job performance. Accordingly, Ms. Terry must be able to meet her burden of proving that Sedgwick's reason is a pretext for discrimination.

"If the employee succeeds in casting doubt on the proffered reason for dismissal, the ultimate question of whether the employer discriminated against the employee must be left for a jury to consider." O'Connor v. DePaul Univ., 123 F.3d 665, 670 (7th Cir. 1997) (citations omitted). Ms. Terry argues that Sedgwick's skewed investigation into the FedEx mishap and the false and misleading statements concerning her work performance cast doubt on Sedgwick's proffered reason for dismissal. This Court finds that Ms. Terry cannot establish pretext because the record reflects that Sedgwick conducted a thorough and fair investigation and accurately represented Ms. Terry's work history at the firm. Thus, summary judgment must be granted.

## CONCLUSION

Ms. Terry failed to establish that Sedgwick's legitimate, nondiscriminatory reason for her dismissal is a pretext for discrimination. Therefore, Sedgwick's Motion for Summary Judgment [Doc. 15] must be GRANTED.

THUS DONE AND SIGNED, in Shreveport, Louisiana, on this 19 day of June 2002.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE